FILED

JUL - 8 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEANDRE AUSTIN,

       Petitioner,

    v.

J. YATES, Warden,

       Respondent.

_____/

No. C 10-2230 WHA (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. 2254. Respondent was ordered to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it. Petitioner filed a traverse. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

In 2008, a jury in the Contra Costa County Superior Court convicted petitioner of committing thirteen sexual offenses. The victims were his three minor nieces with whom he periodically shared living quarters during the period of 2002 to 2006. Specifically, the jury convicted petitioner of: four counts of sexual penetration committed against a person under the age of fourteen (Cal. Pen. Code § 289(j)(2)); one count of aggravated sexual assault committed upon a child under the age of fourteen (Cal. Pen. Code § 269(a)(5)); one count of rape accomplished by force (Cal. Pen. Code § 261(a)(2)); three counts of continuous sexual conduct with a child under the age of fourteen (Cal.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  Pen. Code § 288.5); two counts of committing a lewd or lascivious act upon a child under the age of

2  fourteen (Cal. Pen. Code § 288(a)); one count of attempted oral copulation accomplished by force

3  (Cal. Pen. Code §§ 288a(c)(2), 664); and one count of attempted forcible sodomy accomplished by

4  force (Cal Pen Code §§ 286(c)(2), 664).  The trial court sentenced petitioner to state prison for a

5  determinate term of twenty-seven years, and to three indeterminate terms of fifteen years to life, for a

6  total sentence of seventy-two years to life.  The California Court of Appeal vacated two of the counts

7  of continuous sexual conduct, and affirmed the judgment in all other respects (Exh. F), and the

8  California Supreme Court denied the petition for review (Exh. G).

9       The California Court of Appeal opinion did not include a statement of facts. The following

10  background facts describing the charges are taken from the parties' briefs to the state appellate court

11  (Exhs. C 8–31; D 4–30).

12       Leonard McFadden was the maternal grandfather of the three victims, Jane Does I, II, and III.

13  During the period in question he lived with his long-time partner, Catherine Austin, in two different

14  homes in Richmond, California, where the charged crimes occurred.  For different overlapping

15  periods of time, all three victims lived with McFadden and Austin.  Austin was petitioner's mother.

16  It was disputed how often petitioner stayed at McFadden and Austin's home. The prosecution

17  contended that petitioner stayed intermittently but often, while the defense contended that petitioner

18  visited only occasionally and rarely stayed the night.

19       Jane Doe I, born July 3, 1993, testified that petitioner began molesting her in the winter of

20  2001–2002, when she was in the third grade. Many of the incidents involved petitioner touching her

21  at night, as she slept, causing her to wake and witness his actions.  On one occasion she informed

22  petitioner that she was going to tell McFadden what he was doing, and petitioner responded that he

23  would kill her if she did.  She testified that petitioner penetrated her vagina with his fingers on four

24  separate occasions, waking her from her sleep each time.  Jane Doe II, born July 15, 1995, moved in

25  with McFadden and Austin in December of 2005, when she was in the fifth grade.  She testified that

26  petitioner touched her on the behind on several occasions, that he rubbed her legs and touched her

27  chest, and that he once felt beneath her underwear.  Jane Doe III, born April 27, 1997, moved in

28

2

1 when she was in the first grade. She testified that petitioner touched her multiple times in 2005 and
2 2006 when she was in the third and fourth grades, both on her behind and her privates. She also
3 testified that on one occasion he attempted to kiss her. On another, he tried to make her put her
4 mouth on his penis, and to insert his penis into her anus.

5 Jane Doe I also testified that, in July of 2006, petitioner attempted to rape her. He held her
6 down, got on top of her, removed her pants, took out his penis, and created genital-to-genital contact.
7 Though she did not see his penis penetrate her, she felt pain in her vagina. In December of 2006, a
8 teacher overheard her telling classmates that her step-uncle was molesting her. The teacher reported
9 the incident to the authorities, which eventually led to petitioner's arrest.

10 Petitioner did not testify in his defense. While being interviewed by the police, petitioner
11 stated that he did not remember touching any of the victims, and he also stated that he might have
12 touched them involuntarily because of his epileptic seizures. At trial, the defense argued that the
13 three victims were fabricating their stories (RT 1111–20).

## ANALYSIS

### A. STANDARD OF REVIEW

16 A district court may not grant a petition challenging a state conviction or sentence on the
17 basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of
18 the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,
19 clearly established Federal law, as determined by the Supreme Court of the United States; or (2)
20 resulted in a decision that was based on an unreasonable determination of the facts in light of the
21 evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both
22 to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362,
23 407–09 (2000), while the second prong applies to decisions based on factual determinations, *Miller*
24 *El v. Cockrell*, 537 U.S. 322, 340 (2003).

25 A state court decision is "contrary to" Supreme Court authority, that is, falls under the first
26 clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached
27 by [the Supreme] Court on a question of law or if the state court decides a case differently than [the

28

3

United States District Court
For the Northern District of California

1  Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at
2  412–13. A state court decision is an "unreasonable application of" Supreme Court authority, falls
3  under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle
4  from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the
5  prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply
6  because that court concludes in its independent judgment that the relevant state court decision
7  applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the
8  application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

9  **B.    ISSUES PRESENTED**

10  As grounds for federal habeas relief, petitioner asserts that there was insufficient evidence to
11  support his convictions of (1) rape accomplished by force and (2) committing continuous sexual
12  conduct with a child under the age of fourteen.

13  1. Legal Standard

14  A state prisoner who alleges that the evidence in support of his state conviction cannot be
15  fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable
16  doubt states a constitutional claim. *Jackson v. Virginia*, 443 U.S. 307, 321–24 (1979). A federal
17  court reviewing collaterally a state court conviction does not determine whether it is satisfied that the
18  evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir.
19  1992). The federal court "determines only whether, 'after viewing the evidence in the light most
20  favorable to the prosecution, any rational trier of fact could have found the essential elements of the
21  crime beyond a reasonable doubt.'" *Ibid.* (quoting *Jackson*, 443 U.S. at 319). Only if no rational
22  trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted.
23  *Jackson*, 443 U.S. at 324.

24  After AEDPA, a federal habeas court applies the standards of *Jackson* with an additional
25  layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal
26  habeas court must ask whether the operative state court decision reflected an unreasonable
27  application of *Jackson* and *Winship* to the facts of the case. *Id.* at 1275 (quoting 28 U.S.C. 2254(d)).
28

4

1  Section 2254(d)(1) plainly applies to *Jackson* cases; that is, if the state court affirms a conviction
2  under *Jackson*, the federal court must decide whether the state court's application of *Jackson* was
3  objectively unreasonable. *Sarausad v. Porter*, 479 F.3d 671, 677–78 (9th Cir. 2007).

4       A federal court reviewing a state court's application of *Jackson* must look to the "totality of
5  the evidence" in evaluating the court's decision. *Id.* at 678. When reviewing a record that supports
6  conflicting inferences, a federal habeas court "must presume . . . that the trier of fact resolved any
7  such conflicts in favor of the prosecution," *Jackson*, 443 U.S. at 326, and as such "[a] jury's
8  credibility determinations are . . . entitled to near-total deference." *Bruce v. Terhune*, 376 F.3d 950,
9  957 (9th Cir. 2004).

10       2. Evidence of Rape

11       Petitioner claims that there was insufficient evidence to support his conviction of forcibly
12  raping Jane Doe I. Under California law, rape is defined as "an act of sexual intercourse
13  accomplished with a person not the spouse of the perpetrator, under any of the following
14  circumstances: . . . Where it is accomplished against a person's will by means of force, violence,
15  duress, menace, or fear of immediate and unlawful bodily injury on the person." Cal. Pen. Code
16  § 261(a)(2). The trial judge instructed that "[a]ny sexual penetration, however slight, constitutes
17  engaging in an act of sexual intercourse" (RT 1028; CALJIC 10.00). Petitioner asserts that there was
18  insufficient evidence to establish the element of penetration because in one part of Jane Doe I's
19  interview with a social worker at the Martinez Children's Interview Clinic ("CIC"), she said that
20  petitioner's "private part" did not go even "a little bit inside" of her (CT 777).

21       Despite Jane Doe I's statement to the social worker that she did not believe that she was
22  penetrated, there was sufficient evidence on the record for a reasonable jury to find that penetration
23  occurred for the purposes of a rape conviction. Under California law, actual vaginal penetration is
24  unnecessary, as penetration of the external female genitalia is adequate to "constitute[] 'sexual
25  penetration' within the meaning of section 289." *People v. Quintana*, 89 Cal. App. 4th 1362, 1371
26  (2001). While considering the totality of the evidence and making all inferences in favor of the
27  prosecution, the California Court of Appeal held that the jury reasonably found beyond a reasonable

28

United States District Court
For the Northern District of California

5

doubt that that petitioner had "penetrated" the external genitalia. It stated:

> Viewed most favorably in support of the verdict, the record shows that defendant lay on top of Jane Doe I with an erect penis and prior knowledge of the victim's genital area. He had pulled off the pajama bottoms of the victim, who was not wearing underwear. In other words, unimpeded genital to genital contact was established. As even defendant now implicitly concedes, his motive was sexual. With the victim's arms immobilized, defendant's breathing became labored as he began pelvic thrusting. The victim felt "pressure against my vagina" that caused "sharp pain." She subsequently told the Interview Center counselor that her "private part" hurt when she urinated. Even accepting that no vaginal penetration was achieved, the credible evidence shows penile pressure that caused pain of a non-external nature. A rational jury could reasonable conclude from this that there was "sexual penetration" of a "genital opening" by defendant's penis, and thus there was rape.

*People v. Austin*, 2009 Cal. App. Unpub. LEXIS 8726, 11–12 (Cal. Ct. App. Oct. 30, 2009) (citations omitted).

The state appellate court was correct in finding that there was sufficient evidence to support petitioner's rape conviction. In her CIC interview, Jane Doe I described feeling a painful pressure from petitioner's erect penis touching on the outside of her private parts (CT 771–74, 777, 779). She said that the pressure "felt harder" than a previous instance when he had digitally penetrated her vagina to the second knuckle, and that her private part hurt afterward when she urinated (*id.* at 776–77, 778). In addition, at trial Jane Doe I testified that she did not look down to see if petitioner was penetrating her but that she felt a "sharp pain" that was the "same" but worse than when petitioner digitally penetrated her (RT 268–69, 272). She said that, although she could not feel anything going "actually in and out of [her] vagina," the pain felt like she was getting "cut" and it was caused by petitioner moving his waist towards her (*id.* at 270–72). Looking at the evidence in its entirety, it was reasonable for the state court to conclude that a rational jury could find beyond a reasonable doubt that there was some "penetration" of the victim's external genitalia, which is all that California law requires to establish rape. The rejection of petitioner's claim by the state appellate court was neither contrary to nor an unreasonable application of clearly established federal law.

### 3. Evidence of Continuous Sexual Conduct

Petitioner also claims that there was insufficient evidence to find him guilty of continuous sexual abuse of Jane Doe II. California law provides that "[a]ny person who either resides in the

6

1   same home with the minor child or has recurring access to the child, who over a period of time, not
2   less than three months in duration, engages in three or more acts of substantial sexual conduct with a
3   child under the age of 14 years at the time of the commission of the offense, as defined in
4   subdivision (b) of Section 1203.066, or three or more acts of lewd and lascivious conduct, as defined
5   in Section 288, with a child under the age of 14 years at the time of the commission of the offense is
6   guilty of the offense of continuous sexual abuse of a child." Cal. Pen. Code § 288.5(a).

7       Petitioner argues that there was insufficient evidence because Jane Doe II's statements
8   concerning the chronology of events were too inconsistent and contradictory to establish that the
9   conduct occurred over a minimum period of three months, as is required by Section 288.5 (Trav.
10  3–4). This argument fails because Jane Doe II made statements that indicate that the abuse occurred
11  over a period of more than three months. Under *Jackson*, if some portion of a witness's
12  "contradicting and inconsistent" testimony provides a sufficient basis for a rational jury to find a
13  defendant guilty beyond a reasonable doubt, then the reviewing court must  assume that the jury
14  "resolved . . . conflicts of evidence in favor of the prosecution's factual theory" and find sufficient
15  evidence to uphold the jury's verdict. *See United States v. Loya*, 807 F.2d 1483, 1489 (9th Cir.
16  1987).

17      At one point, Jane Doe II testified that she believed that petitioner's abusive conduct
18  occurred within a two-week span (RT 407). However, she also she made several other statements
19  that, if taken as true by the trier of fact, would establish the three-month-minimum time frame
20  necessary to support a count of continuous sexual conduct. She testified that the first inappropriate
21  incident occurred around the time of her sixth grade orientation, which was in the early fall of 2006
22  (*id.* 385–86, 404), and that another  incident happened right after Halloween, placing it in early
23  November of 2006 (*id.* at 404).  This testimony creates a two-month time frame in which petitioner
24  was molesting her.  A reasonable jury could then rely on other statements made by Jane Doe II to
25  expand this time frame to over three months.  For instance, in Jane Doe II's CIC interview on
26  December 18, 2006, she stated that petitioner began molesting her "about a year ago" (CT 797).  Had
27  the jury found this statement credible, it would have a sufficient basis to find the temporal

28

7

*United States District Court*
For the Northern District of California

1   requirement fulfilled. Alternatively, Jane Doe II also stated that one of the times petitioner touched

2   her behind was in the middle of the summer of 2006 (RT 404). As the state appellate court

3   indicated, "[t]he jury could reasonably conclude that when Jane Doe II pegged one of the buttock

4   touching incidents as occurring 'in the middle of summer,' she meant it literally, thus identifying the

5   month as July." *Austin*, 2009 Cal. App. Unpub. LEXIS 8726 at 16. A jury crediting this statement

6   would have "a substantial basis [to conclude] that one act occurred in July, one in August or

7   September, and one in early November." *Id.* at 17.

8          While Jane Doe II's testimony about the chronology of the abuse was at times contradictory,

9   she was a young victim of molestation that the jury could reasonably find to be confused on the one

10   occasion when she described the abuse as lasting only a couple of weeks. It is the realm of the trier

11   of fact to make credibility judgment's regarding what parts of her testimony to believe, and the

12   reviewing court does not reweigh those credibility judgments. As such, given that the majority of

13   Jane Doe II's testimony support a finding that petitioner's sexual abuse occurred over at least a three-

14   month period, the state appellate court was reasonable in holding that there was sufficient evidence

15   to support the jury's conclusion.

16          Petitioner also claims that evidence is insufficient because the prosecution incorrectly

17   charged that the sexual acts occurred "[o]n or about January 2005 through January 2006" (Exh. A

18   104). Petitioner argues that this time frame was necessarily erroneous because the earliest instance

19   of lewd and lascivious conduct indicated by the evidence was December 2005 (CT 797). This

20   argument fails as a matter of state law, however, because the prosecution need only prove that the

21   sexual conduct occurred over a period of no less than three months and not the precise time frame of

22   the abuse. The California Court of Appeal summarized:

23          The victim must be able to describe the number of acts and "the *general time period*
           in which those acts occurred." (*People v. Jones* (1990) 51 Cal. 3d 294, 316.)
24          Additional details from other sources may be considered in establishing the
           elements of the crime. (*Ibid.*) "[T]he prosecution need not prove the exact dates of
25          the predicate sexual offenses in order to satisfy the three-month element. Rather, it
           must adduce sufficient evidence to support a reasonable inference that at least three
26          months elapsed between the first and third sexual acts. Generic testimony is
           certainly capable of satisfying that requirement . . ." (*People v. Mejia* (2007) 155
27          Cal. App. 4th 86, 97.)

28

8

1  *Austin*, 2009 Cal. App. Unpub. LEXIS 8726 at 14–15. The state court's interpretation of state law

2  binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks v.*

3  *Feiock*, 485 U.S. 624, 629 (1988). As a result, the fact that the evidence proved a different time

4  frame than what was identified in the charging documents does not establish insufficient evidence of

5  continuous sexual abuse.[1]

6  The rejection of this claim by the state appellate court was neither contrary to nor an

7  unreasonable application of clearly established United States Supreme Court authority.

8  ## CONCLUSION

9  For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

10  Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on

11  whether a petitioner is entitled to a certificate of appealability in the same order in which the petition

12  is denied. Petitioner has failed to make a substantial showing that his claims amounted to a denial of

13  his constitutional rights or demonstrate that a reasonable jurist would find the denial of his claim

14  debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, no certificate of

15  appealability is warranted in this case.

16  The clerk shall enter judgment and close the file.

17  **IT IS SO ORDERED**.

18  DATED: July ____ /___, 2011

19  WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25  G:\PRO-SE\WHA\HC.10\AUSTIN2230.RUL.wpd

26

27  [1] In his federal petition, petitioner does not claim a lack of notice or a due process violation arising from the error in the charging documents. He raised such a claim in the state courts, but the California Court of Appeal rejected it on the basis of waiver and lack of prejudice (Exh. F 1–2).

28

9

*United States District Court*
*For the Northern District of California*